UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABC PROFESSIONAL TREE SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 3013 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| COMMONWEALTH EDISON CO., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

ABC Professional Tree Services, Inc. brought this suit against Commonwealth Edison Co. for breach of contract. Doc. 1. ABC claims that ComEd wrongfully withheld payment owed under the contract; ComEd says that it properly kept the money to remedy ABC's incomplete performance. Discovery has closed and a bench trial is set for September 21, 2016. Doc. 60. Now before the court is ComEd's summary judgment motion. Doc. 38. The motion is denied.

**Background**

The facts are set forth as favorably to ABC as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015). That said, the material facts are largely undisputed.

The parties' contract, which had a two-year term, required ComEd to pay ABC on a time and materials basis for vegetation control services. Doc. 46 at ¶¶ 1-2. (A time and materials contract "is a form of open-ended cost reimbursement contract under which the contractor is paid merely for furnishing construction resources of labor and materials," with labor costs computed at fixed hourly rates and materials provided at cost. 1 Philip L. Bruner & Patrick J. O'Connor,

Jr., *Bruner and O'Connor on Construction Law* § 2:20 (2015). Such contracts typically are used when "it is impracticable to estimate accurately the extent or duration of the work or to anticipate costs with any reasonable degree of confidence." *Ibid*. (internal quotation marks omitted).) ComEd issued purchase orders detailing the scope, duration, and price of work to be completed by ABC. Doc. 1-1 at 9-10. After performing that work, ABC submitted an invoice to ComEd detailing its labor and materials costs. *Id*. at 17. The contract incorporated a pricing schedule providing hourly billing rates for different categories of labor and standard costs for various supplies. Doc. 1-3 at 16-22; Doc. 1-4 at 1.

In December 2011, ComEd notified ABC that the contract would not be renewed. Doc. 46 at ¶ 3. At that point, ABC had been unable to complete on all of the circuit lines (which correspond to particular locations) called for by the contract and sought a contract extension to complete the unfinished circuits. Doc. 52-1 at ¶ 2. On January 13, 2012, ComEd notified ABC that its "effort to cure non-performance issues has not been acceptable, and ComEd hereby provides notice of its intent to terminate the above services … effective January 30, 2012." Doc. 46-1 at 5. ABC continued to perform work under the agreement until January 31, 2012. Doc. 46 at ¶ 17. By that time, ABC had submitted line closure forms for eight circuit lines. *Id*. at ¶ 7.

ComEd hired the Davey Resource Group to audit the work performed by ABC. *Id*. at ¶¶ 14-15. The audit revealed what Davey believed to be several shortcomings. *Id*. at ¶ 16; Doc. 37-3 at 13-14. In February 2012, ComEd assigned the uncompleted work to Asplundh Tree Service; ComEd ultimately paid Asplundh $114,385.61 for that work. Doc. 46 at ¶¶ 20-24.

The contract allowed ComEd to withhold as retainage eight percent of each ABC invoice or the entire amount of ABC's final invoice. *Id*. at ¶ 4. ComEd is currently holding $140,004.07 as retainage. *Id*. at ¶ 5. (ComEd has offered to pay ABC $25,619.26, the difference between the

$140,004.07 retainage and the $114,385.61 it paid to Asplundh, but ABC refused. *Id*. at ¶ 25.) To justify this retainage, ComEd relies on what it deems to be ABC's incomplete performance and on this provision of the contract:

> [ComEd] may decline to pay an invoice, in whole or in part, due to … [m]aterial breach by Contractor [ABC] of any of its obligations under this Agreement or Purchase Order, including the costs to [ComEd] of remedying the breach (whether by repairing or reordering the Material or re-performing the Services or otherwise) and all other costs directly attributable to other services that are required to be performed in connection with remedying such breach.

*Id*. at ¶ 6.

ABC denies that Asplundh's $114,385.61 bill was entirely for "reworks" to remedy unsatisfactory or incomplete work by ABC, and counters that the Asplundh invoice covered portions of circuit lines on which ABC never worked and for which ABC never invoiced ComEd. Doc. 46 at ¶ 24; Doc. 47 at ¶¶ 6-7. In response, ComEd admits that Asplundh worked on portions of certain circuit lines on which ABC never worked and for which ABC never invoiced ComEd. Doc. 52-1 at ¶ 7. Accordingly, the record shows that the work for which ComEd paid Asplundh included both reworks of services for which ComEd had already paid ABC and new work that ABC had never done and for which it had never charged ComEd.

## Discussion

ABC alleges that ComEd breached their contract by withholding $140,004.07 as retainage. Doc. 1 at ¶ 2. "The required elements of a breach of contract claim in Illinois are the standard ones of common law: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (internal quotation marks omitted). ComEd argues that it did not breach the contract and that ABC did not perform its obligations under the contract.

3

"Generally, '[w]hen performance of a duty under a contract is due any non-performance is a breach.'" *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1059 (Ill. 2007) (quoting Restatement (Second) of Contracts § 235 (1979)). ComEd says that it did not breach because the contract permits it to use the retainage to cover the $114,385.61 it paid Asplundh. Doc. 40 at 7-8. Whether ComEd is right turns on whether the contract allowed ComEd to use the retainage to pay Asplundh for work that had been assigned to ABC but that ABC never actually invoiced. Doc. 52 at 3.

ComEd argues that it may do so because ABC tendered line closure forms indicating that the circuit lines at issue had been finished. *Ibid*. Those forms, the argument goes, constitute admissions that ABC had completed the lines and therefore that any money paid to Asplundh was to re-perform those services—regardless of whether ABC ever billed ComEd for work on those lines. *Id*. at 3-4. But ComEd has failed to explain what legal significance, if any, the line closure forms have under the contract. Indeed, the contractual provision upon which ComEd relies to justify its withholding the money, quoted at greater length above, is triggered not by ABC's submission not of a line closure form, but of an invoice:

> [ComEd] may decline to pay an invoice, in whole or in part, due to … Material breach by Contractor of any of its obligations under this Agreement … including the costs to [ComEd] of remedying the breach (whether by repairing or reordering the material or re-performing the Services or otherwise) ….

Doc. 1-1 at 19-20. The most natural reading of this provision is that ComEd was entitled to reduce the charges on an invoice by any costs ComEd incurred in remedying unsatisfactory work for which ABC invoiced ComEd. The provision does not say that ComEd could use funds retained from earlier invoices to pay a third-party contractor to perform work for which ABC never invoiced ComEd; this would essentially allow ComEd to receive those services for free.

4

ComEd counters that the court's interpretation of the contract would allow ABC to disregard its contractual duties with impunity so long as it never billed ComEd:

> ABC is arguing that it can tender incomplete performance under the Agreement while claiming performance is complete so long as it bills ComEd only for the portions of circuit lines it actually worked on. ComEd would have no remedy for work items that are neglected or overlooked so long as ABC does not bill for these items, and instead, limits its billing to the portions of the circuit lines actually worked on.

Doc. 52 at 7. But ComEd would have a remedy if ABC failed to complete certain work—it could sue ABC for breach of contract. ABC might be liable for any incidental costs incurred in finding another contractor, as well as any price difference between what ABC would have charged and what the new contractor did charge. Therefore, the contract would have left ComEd with a remedy if ABC was obligated to perform certain work, performed substandard or no work, and then did not invoice ComEd.

ComEd also argues that ABC cannot maintain a contract claim because it failed to complete all work on the assigned circuit lines. Doc. 40 at 6-7. But the contract contemplates payment at regular intervals over the course of two years—not a lump sum payment once all services have been rendered. Doc. 1-1 at 17. ComEd has not pointed to any provision requiring ABC to have finished *all* work before it is entitled to *any* payment.

Given that at least some of the work assigned to Asplundh and paid by ComEd included work for which ABC never charged ComEd, ComEd has failed to establish that summary judgment is appropriate. ComEd might have sought summary judgment on a *portion* of its retainage—for the work Asplundh performed at locations on which ABC worked and for which ABC invoiced ComEd—but it did not do so, and accordingly has forfeited any such argument for purposes of summary judgment. *See Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011) ("As the moving party, the [defendant] had the initial burden of identifying the basis for seeking

5

summary judgment."); *Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990) ("When a party moves for summary judgment on ground A, the opposing party need not address grounds B, C, and so on.").

## Conclusion

For the foregoing reasons, ComEd's motion for summary judgment is denied. The court will resolve at the bench trial the extent to which ComEd must return the retainage to ABC.

March 7, 2016

United States District Judge